Michael Louis Kelly - State Bar No. 82063
mlk@kirtlandpackard.com
Behram V. Parekh - State Bar No. 180361
bvp@kirtlandpackard.com
Heather M. Peterson - State Bar No. 261303
hmp@kirtlandpackard.com
KIRTLAND & PACKARD LLP
2361 Rosecrans Avenue
Fourth Floor
El Segundo, California 90245
Telephone: (310) 536-1000
Facsimile: (310) 536-1001

*Counsel for Plaintiff and all others similarly situated*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOVINDA HOGAN AND CATHERINE GIASONE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>USPLABS, LLC, a Texas Limited Liability Company, and DOES 1-10, inclusive,<br><br>Defendant. | Case No. **'12CV0411 LAB NLS**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1. VIOLATION OF THE FALSE ADVERTISING LAWS ("FAL");** Bus. & Prof. Code §17500 et seq.;<br><br>**2. VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAWS ("UCL"); Bus. & Prof. Code §17200 et seq.;**<br><br>**3. VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA"), Civil Code §1750 et seq.**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiffs Govinda Hogan and Catherine Giasone ("Plaintiffs"), on behalf of themselves and all others similarly situated (collectively "Plaintiffs"), allege the following upon information and belief based upon investigation of counsel, except to their own acts, which they allege upon personal knowledge:

## PARTIES

1. Plaintiff Govinda Hogan is a resident of San Diego, California and purchased Jack3d in San Diego County, California. Plaintiff Catherine Giasone is a resident of San Diego, California and purchased OxyELITE PRO in San Diego County, California. Plaintiffs relied on Defendant's representations regarding the safety, efficacy and legality of the OxyELITE Pro and Jack3d (jointly referred to herein as "Products"), as detailed herein, and but for those representations, Plaintiffs would not have purchased or paid as much for such products.

2. Defendant USPLabs, LLC is a Texas limited liability company with its principal place of business in Texas. USPLabs develops and markets Jack3d and OxyELITE Pro, and has sold such products in California and across the United States of America.

3. The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

4. At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions

complained of herein were alleged and made known to, and ratified by, each of the other Defendants (USPLabs, LLC and DOE Defendants will hereafter collectively be referred to as "Defendant").

## JURISDICTION AND VENUE

5. A Court has diversity jurisdiction over this class action pursuant to 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the class are citizens of different states than the Defendant. *See* 28 U.S.C. §1332(d)(2)(A).

6. This Court also has personal jurisdiction over Defendant because Defendant currently does business in this state.

7. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District and a substantial portion of the conduct complained of herein occurred in this District.

## FACTUAL ALLEGATIONS

8. Defendant manufactures, markets, and sells Jack3d and OxyELITE Pro as "Ultra-Premium supplements" that can provide "safe and effective" weight loss and muscle building. Defendant claims their products are "University Studied" and that research supports their efficacy and safety claims. Defendant advertises the products as "completely legal" dietary supplements.

9. The form of DMAA Defendant uses in the products is a synthetic form that is both illegal and dangerous. Defendant's advertising statements regarding the safety and legality of the poducts are false and misleading. The research relied upon by Defendant is inadequate and/or seriously flawed with regard to Defendant's safety and efficacy claims.

10. Defendant's DMAA is manufactured synthetically, and therefore unlawfully on the market as an ingredient in Defendant's products which, because they include Defendant's DMAA, are both "adulterated" dietary supplements

pursuant to the Food, Drug, and Cosmetic Act. Assuming, *arguendo*, Defendant's DMAA is not synthetically manufactured and it is instead naturally extracted from the geranium plant (as Defendant has also claimed), Defendant's DMAA, by virtue of its inclusion in its prodcuts, makes the products "adulterated" dietary supplements and unlawfully on the market pursuant to the Food, Drug, and Cosmetic Act. Support for these allegations include without limitation the following:

a. Defendant's DMAA, because it is synthetic, cannot be a "constituent" of a botanical and cannot qualify as a dietary ingredient and be legally sold in a dietary supplement under 21 U.S.C. § 321(ff)(1)(F), nor could it be an extract of a botanical under 21 U.S.C. § 321(ff)(1)(F) because it was not actually extracted from the botanical, as clarified in the Food and Drug Administration's (FDA) "Draft Guidance for Industry: Dietary Supplements: New Dietary Ingredient Notifications and Related Issues" (July 2011) at Section IV.D.2;

b. Assuming Defendant's DMAA is a dietary ingredient, it is a new dietary ingredient pursuant to 21 U.S.C. § 350b(c) because it is an ingredient that was not marketed as a dietary ingredient in the United States before October 15, 1994;

c. Assuming Defendant's DMAA is a dietary ingredient, a proper notification was not submitted to the FDA by Defendant with respect to Defendant's DMAA at least seventy-five days prior to the first sale of Defendant's Products, even though such a notification would have been required by virtue of the ingredient's inclusion in the Products pursuant to 21 U.S.C. § 350b(a)(2), assuming Defendant's DMAA is a dietary ingredient;

d. Even if Defendant's DMAA is a dietary ingredient and was marketed as a dietary ingredient in the United States before October 15, 1994, it

was not marketed in the same chemical composition or structure as in Defendant's products, as clarified in the FDA's "Draft Guidance for Industry: Dietary Supplements: New Dietary Ingredient Notifications and Related Issues" (July 2011) at Section IV.A.11;

e. Defendant's DMAA is not present in the food supply as an article used for food in a form in which the food has not been chemically altered, as would otherwise be allowed by 21 U.S.C. § 350b(a)(1), because Defendant's claims that Defendant's DMAA "is a natural constituent of the geranium flower" is false (because Defendant's DMAA is synthetic); and/or

f. Defendant's DMAA is a component of dietary supplements that have not been prepared, packed, or held under conditions that meet current good manufacturing practice regulations, as required by 21 U.S.C. § 342(g)(1).

11. Defendant also makes numerous efficacy and safety assertions which Defendant claims are supported by university studies, testing and other "research." Some of the claims include:

a. "USPLabs Athletes – Real People Real Results";

b. "Jack3d is THE original University Studied Ultra-Concentrated Pre-Workout…";

c. "Jack3d is now backed by multiple University studies, including double-blind, placebo-controlled research";

d. "Of course, Jack3d has already been "put to the test" by lifters all around the globe…";

e. "Needless to say, if you want the best, look no further than Jack3d – proven in the real world & in the lab…";

f. "NOTHING delivers consistent workout domination for such a great price – NOTHING!";

g. "Perfectly-executed matrix of energy-spawning, muscle-engorging compounds only found in Jack3d";

h. "From Day 1, USPlabs has been focused on YOU – delivering cutting edge products that allow you to kick ass & take names..."; and

i. Introducing a burner coined the "Super Thermogenic™" by those familiar with its effectiveness... It's called OxyELITE Pro™ & It's absolutely unmatched!"

12. In reality, no reliable clinical research or university testing can support the above claims made by Defendant. Those "tests" and "studies" purportedly relied upon by Defendant used testing samples too small to conclusively show any real results, failed to accurately report the results, and were produced on the same day by the same open-access, online journal, Nutrition and Metabolic Insights.

13. Concern about the safety and legality of DMAA has spread so wide that the United States military removed all products containing DMAA from their Army and Air Force Exchange Service and Navy Exchange stores around the world on December 3, 2011. The U.S. military was prompted to remove all DMAA products from their shelves after two soldiers suffered heart attacks and died earlier in 2011 during physical training. The deaths prompted the U.S. to Army to launch an "ongoing safety review after recording a number of other serious health effects among known and potential users of products containing DMAA including kidney and liver failure, seizures, loss of consciousness, heat injury and muscle breakdown during exertion, and rapid heartbeat."

14. Defendant's misrepresentations regarding the efficacy, safety and legality of the products were designed to, and did, lead Plaintiffs and others similarly situated (collectively the "Class") to believe that the products were not only effective, but legal and safe as well. Plaintiffs and members of the Class

1  relied on Defendant's misrepresentations and would not have paid as much, if
2  at all, for the products but for Defendant's misrepresentations.
3  15. Plaintiff Govinda Hogan experienced various symptoms after taking Jack3d,
4      including a pounding heart, feelings of nervousness, and red and itchy skin.
5      Plaintiff Catherine Giasone experienced various systems after taking
6      OxyELITE Pro, including sweatiness and shakiness.
7  16. Defendant sells the products for approximately $59.99 and $44.99
8      respectively based on the preceding false advertising claims. As a result,
9      Defendant has wrongfully taken millions of dollars from California
10     consumers.
11 17. Accordingly, Plaintiffs bring this lawsuit to enjoin the ongoing deception of
12     thousands of California consumers by Defendant, and to recover the funds
13     taken by this unlawful practice.

## CLASS DEFINITIONS AND CLASS ALLEGATIONS

18. Plaintiffs bring this action on behalf of themselves, on behalf of all others similarly situated, as members of the class (referred to hereafter as the "Class") defined as follows:

California Class: The class the Plaintiffs seek to represent consists of all persons who are citizens or residents of California who purchased Jack3d or OxyELITE Pro within the four years prior to the filing of the initial complaint. Excluded from the class are Defendant, any parent, subsidiary, affiliate, or controlled person of Defendant, as well as the officers and directors of Defendant, and the immediate family member of any such person. Also excluded is any judge who may preside over this case, and such judge's immediate family or courtroom staff.

19. This action is brought and may be properly maintained as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23(a)(1)-(4) and

23(b)(1)-(3). This action satisfies the numerosity, typicality, adequacy, predominance and superiority requirements of those provisions.

20. [Fed. R. Civ. P. 23(a)(1)] The Class is so numerous that the individual joinder of all of its members is impractical. While the exact number and identities of Class members are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs are informed and believe the Class includes thousands of members. Plaintiffs allege that the Class may be ascertained by the records maintained by Defendant.

21. [Fed. R. Civ. P. 23(a)(2)] Common questions of fact and law exist as to all members of the Class which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

    (a) Whether Defendant's advertising or labeling are false or misleading;

    (b) Whether Defendant's claims are supported by scientific evidence;

    (c) Whether Defendant's conduct violates the CLRA or other laws;

    (d) Whether Defendant's conduct is "unfair" under Bus. & Prof. Code Section 17200;

    (e) Whether, as a result of Defendant's misconduct, Plaintiffs and the Class are entitled to damages, restitution, equitable relief and other relief, and the amount and nature of such relief.

22. [Fed. R. Civ. P. 23(a)(3)] Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class have sustained injury and are facing irreparable harm arising out of Defendant's common course of conduct as complained of herein. The losses of each member of the

Class were caused directly by Defendant's wrongful conduct as alleged herein.

23. [Fed. R. Civ. P. 23(a)(4)] Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including complex consumer and mass tort litigation.

24. [Fed. R. Civ. P. 23(b)(3)] A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

25. [Fed. R. Civ. P. 23(b)(1)(A)] The prosecution of separate actions by thousands of individual Class members would create the risk of inconsistent or varying adjudications with respect to, among other things, the need for and the nature of proper notice, which Defendant must provide to all Class members.

26. [Fed. R. Civ. P. 23(b)(1)(B)] The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would

substantially impair or impede the ability of such non-party Class members to protect their interests.

27. [Fed. R. Civ. P. 23(b)(2)] Defendant has acted or refused to act in respects generally applicable to the Class, thereby making appropriate final injunctive relief with regard to the members of the Class as a whole.

## FIRST CAUSE OF ACTION
## Business and Professions Code §17500
## (Violation of the False Advertising Act)
### (By Plaintiffs and the Class Against All Defendants)

28. Plaintiffs hereby incorporate paragraphs 1-27 above as if set forth in full.

29. California Business and Professions Code (the "Code") § 17500 provides that "[i]t is unlawful for any ... corporation ... with intent ... to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

30. Defendant misled consumers by making untrue statements and failing to disclose what is required as stated in the Code, as alleged above.

31. As a direct and proximate result of Defendant's misleading and false advertising, Plaintiffs and the members of the Class have suffered injury in fact and have lost money or property.

32. The misleading and false advertising described herein presents a continuing threat to Plaintiffs and the Class in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced

to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained.

## SECOND CAUSE OF ACTION
## Business and Professions Code § 17200, et seq.
## (Violation of the Unfair Competition Law)
### (By Plaintiffs and the Class Against All Defendants)

33. Plaintiffs hereby incorporate paragraphs 1-32 above as if set forth in full.

34. California Business and Professions Code § 17200, et seq., (the "Unfair Competition Law" or "UCL") authorizes private lawsuits to enjoin acts of "unfair competition" which includes any unlawful, unfair, or fraudulent business practice.

35. The UCL imposes strict liability. Plaintiffs need not prove that Defendant intentionally or negligently engaged in unlawful, unfair or fraudulent business practices—but only that such practices occurred.

36. The material misrepresentations, concealment, and non-disclosures by Defendant and DOES 1-10 as part of their marketing and advertising of their Products are unlawful, unfair, and fraudulent business practices prohibited by the UCL.

37. In carrying out such marketing, Defendant has violated the Consumer Legal Remedies Act, the False Advertising Law, and various other laws, regulations, statutes, and/or common law duties. Defendant's business practices alleged herein, therefore, are unlawful within the meaning of the UCL.

38. The harm to Plaintiffs and members of the public outweighs the utility of Defendant's practices and, consequently, Defendant's practices, as set forth fully above, constitute an unfair business act or practice within the meaning of the UCL.

39. Defendant's practices are additionally unfair because they have caused Plaintiffs and the Class substantial injury, which is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could have reasonably avoided.

40. Defendant's practices, as set forth above, have misled the general public in the past and will mislead the general public in the future. Consequently, Defendant's practices constitute an unlawful and unfair business practice within the meaning of the UCL.

41. Pursuant to California Business and Professions Code § 17204, an action for unfair competition may be brought by any "person . . . who has suffered injury in fact and has lost money or property as a result of such unfair competition." Defendant's wrongful misrepresentations and omissions have directly and seriously injured Plaintiffs and the putative class by causing them to pay for a product because they relied on the false and misleading marketing and advertising statements of Defendant.

42. The unlawful, unfair, and fraudulent business practices of Defendant are ongoing and present a continuing threat that members of the public will be misled into purchasing Jack3d or OxyELITE Pro based on the belief that they are safe when, in fact, this is not the case.

43. Pursuant to the UCL, Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease this unfair competition, as well as disgorgement and restitution to Plaintiffs and the Class of all of Defendant's revenues associated with Defendant's unfair competition, or such portion of those revenues as the Court may find equitable.

//
//
//
//

## THIRD CAUSE OF ACTION

## Civil Code § 1770, et seq.

## (Violation of the Consumer Legal Remedies Act)

### (By Plaintiffs and the Class Against All Defendants)

44. Plaintiffs hereby incorporate paragraphs 1-43 above as if set forth in full.
45. The Consumer Legal Remedies Act ("CLRA") creates a non-exclusive statutory remedy for unfair methods of competition and unfair or deceptive acts or business practices. *See Reveles v. Toyota by the Bay*, 57 Cal. App. 4th 1139, 1164 (1997). Its self-declared purpose is to protect consumers against these unfair and deceptive business practices, and to provide efficient and economical procedures to secure such protection. Cal. Civil Code § 1760 et seq. The CLRA was designed to be liberally construed and applied in favor of consumers to promote its underlying purposes. *Id*
46. Plaintiffs have standing to pursue this claim as Plaintiffs purchased Jack3d or OxyELITE Pro, believing that it was safe. One of the reasons that Plaintiffs purchased the product is because they believed the products were safe and backed by science, based on the statements made by Defendant. Plaintiffs relied on Defendant's advertising and have been damaged because the supplements purchased are not safe and are not backed by science and they received negative results from the Products; had they known this, they would have either not bought the products or paid less for them.
47. Plaintiffs have filed concurrently herewith the declaration of venue required by Civil Code Section 1780(d).
48. Defendant's wrongful business practices constituted, and constitutes, a continuing course of conduct in violation of the California CLRA since Defendant is still representing that its products have characteristics which are false and misleading, and have injured Plaintiffs and the Class.

49. More specifically, Plaintiffs allege that Defendant has violated paragraphs 5, 7, and 9 of California Civil Code § 1770(a) by engaging in the unfair and/or deceptive acts and practices set forth herein. Defendant's unfair and deceptive business practices in carrying out the marketing program described above were and are intended to and did and do result in Plaintiffs and Class members purchasing Defendant's products, in violation of the CLRA. Cal. Civil Code § 1770, et seq.

50. As a result of Defendant's unfair and/or deceptive business practices, Plaintiffs and all consumers who purchased Defendant's supplement products have suffered damage and lost money in that they paid for products that did not have the characteristics and benefits as represented. Plaintiffs seek and are entitled to an order enjoining Defendant from continuing to engage in the unfair and deceptive business practices alleged herein.

51. Pursuant to Section 1782 of the CLRA, Plaintiffs intend to notify Defendant in writing of the particular violations of Section 1770 of the CLRA (the "Notice Letter"). If Defendant fails to comply with Plaintiffs' demands within thirty days of receipt of the Notice Letter, pursuant to Section 1782 of the CLRA, Plaintiffs will amend this Complaint to further request damages under the CLRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for relief and judgment as follows:

1. For preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unfair, unlawful and/or fraudulent business practices alleged above and that may yet be discovered in the prosecution of this action;

2. For certification of the putative class;

3. For restitution and disgorgement of all money or property wrongfully obtained by Defendant by means of its herein-alleged unlawful, unfair, and fraudulent business practices;

4. For an accounting by Defendant for any and all profits derived by Defendant from its herein-alleged unlawful, unfair, and/or fraudulent conduct and/or business practices;

5. An award of statutory damages according to proof, except that no damages are currently sought on Plaintiffs' Cause of Action regarding the Consumer Legal Remedies Act at this time;

6. An award of general damages according to proof, except that no damages are currently sought on Plaintiffs' Cause of Action regarding the Consumer Legal Remedies Act at this time;

7. An award of special damages according to proof, except that no damages are currently sought on Plaintiffs' Cause of Action regarding the Consumer Legal Remedies Act at this time;

8. Exemplary damages, except that no damages are currently sought on Plaintiffs' Cause of Action regarding the Consumer Legal Remedies Act at this time;

9. For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, Code of Civil Procedure §1021.5, the CLRA, and the common law private attorney general doctrine;

10. For costs of suit; and

11. For such other and further relief as the Court deems just and proper.

DATED: February 15, 2012              KIRTLAND & PACKARD LLP

By: _____
MICHAEL LOUIS KELLY
BEHRAM V. PAREKH
HEATHER M. PETERSON
*Counsel for Plaintiffs and all others similarly situated*

99003-00001 152236.01                -15-
CLASS ACTION COMPLAINT

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all causes of actions so triable.

DATED: February 15, 2012          KIRTLAND & PACKARD LLP


By: _____
MICHAEL LOUIS KELLY
BEHRAM V. PAREKH
HEATHER M. PETERSON
*Counsel for Plaintiffs and all others similarly situated*

## DECLARATION OF PROPER VENUE BY CATHERINE GIASONE

I, Catherine Giasone, declare as follows:

1. I am a Plaintiff in this action, and am a citizen of the State of California. I have personal knowledge of the facts alleged herein and, if called as a witness, I could and would testify competently thereto.

2. The Complaint in this action, filed concurrently with this Declaration, is filed in the proper place for trial under Civil Code Section 1780(d) in that San Diego County is a county where Defendants do business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed on February 14, 2012, at San Diego, California.

*Catherine Giasone*

Catherine Giasone

# DECLARATION OF PROPER VENUE BY GOVINDA HOGAN

I, Govinda Hogan, declare as follows:

1. I am a Plaintiff in this action, and am a citizen of the State of California. I have personal knowledge of the facts alleged herein and, if called as a witness, I could and would testify competently thereto.

2. The Complaint in this action, filed concurrently with this Declaration, is filed in the proper place for trial under Civil Code Section 1780(d) in that San Diego County is a county where Defendants do business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed on February 14, 2012, at _____, California.

_____
Govinda Hogan